## CORTHELL v. THE BOARD OF THE COUNTY COMMISSIONERS

(No. 1726; March 1, 1932; 8 Pac. (2d) 812)

For the plaintiff in error there was a brief by *Corthell, McCullough* and *Corthell* of Laramie, Wyoming, and oral argument by *Mr. N. E. Corthell.*

For the defendant in error there was a brief and oral oral argument by *F. K. Dukes,* of Laramie, Wyoming.

*Per Curiam.*

The record in this case is here upon proceedings in error. It was at first thought that it was obligatory upon the court to dispose of the case in connection with a question of procedure. This arose through a misapprehension due to an incorrect statement in the record of a controlling fact ap-

pearing in it. As that matter has been cleared up by counsel, the cause will now be considered on its merits.

The pleadings of the parties and an agreed statement of facts upon which the case was tried disclose substantially the following situation material to be considered: Sandgren and Smart, dealers in automobiles and other merchandise in the City of Laramie, purchased a Franklin automobile, which was received by them and placed in their stock at their place of business on January 10, 1929. On or about February 16, 1929, the dealers aforesaid, at the request of the County Assessor of Albany County, listed and returned for taxation for the year 1929, all of their property subject to taxation in said county including among other things and as a part of their stock of merchandise, the automobile aforesaid, as required by Section 2773 Wyo. Comp. St. 1920. Thereafter, they paid to the County Treasurer the taxes levied and assessed upon the property so returned.

On or about March 12, 1929, the plaintiff in error, at the request of the County Assessor of said county, listed and returned for taxation for the year 1929, all the property owned or held by him on that date subject to taxation in said county. Nine days afterwards and on March 21, Sandgren and Smart sold to the plaintiff in error the above mentioned automobile and he continued to own it during the remainder of the year 1929. He did not list it for taxation for that year. Some time thereafter—just when, the record does not make clear—the County Assessor aforesaid inserted in plaintiff in error's property list for taxation and entered upon the assessment roll as against him, said automobile, its value being assessed at $1950 on which the taxes for that year amounted to $42.64. This was done by the County Assessor without giving notice to the plaintiff in error. On November 6, 1929, and before the taxes for the year became delinquent, the latter, as the agreed statement of facts recites, "involuntarily and under protest and to avoid the seizure and sale of his property for the satis-

faction of the taxes levied against him, paid to the County Treasurer of said county the sum of One Hundred Twenty-nine and 40/100 ($129.40) Dollars, in which was included the said amount of $42.64 levied upon the said Automobile."

Subsequently and on November 7, 1929, plaintiff in error made an application to the Board of County Commissioners of the County of Albany, the defendant in error, for a refund of the said sum of $42.64, which application the board declined to grant and the payment of that amount was never refunded to him. This action was commenced against said board as defendant on November 16, 1929, some time before, it would seem, as provided by Section 2843 Wyo. Comp. St. 1920 as amended by Chapter 10, Laws of Wyo. 1927, it became "the duty of the treasurer of each county to make a settlement with the board of county commissioners."

The District Court found generally in favor of the defendant and entered a judgment that plaintiff take nothing by his action and that defendant recover its costs.

To obtain a reversal of this judgment, it is argued that the date to which the listing and valuation of personal property were by law related was the first day of January of each year; or at any rate, not later than the first Monday in February following. Cases are cited of which People v. City of St. Louis, 291 Ill. 600, 126 N. E. 529, 531, is an example, where it is said:

"The general rule is that the 'taxable status of persons and property relates to a day certain in each year. When the law thus provides no taxes can be legally assessed and levied for a particular year unless the conditions requisite to liability exist on the day fixed; and no changes in ownership, fluctuations in value, nonresidence, removal, or destruction of the property, or the like, occurring subsequent thereto, can be considered in making or reviewing an assessment.' 27 Am. & Eng. Ency. of Law (2d Ed.) 662, and cases cited."

So also is Martin L. Hall Company v. Commonwealth, 215 Mass. 326, 102 N. E. 364, 365, where the court was speaking of certain deductions to be made relative to the tax returns of certain corporations and the following language was used:

"It is unreasonable to think that the Legislature could have intended that the value of the deductions should be made as of the sliding time in each year when the tax commissioner might reach each corporation in his calculations. A definite time is almost imperative in the practical administration of the law. The state of the statutes on the same date must govern the rights of parties."

It seems to be suggested inferentially as regards these cases that inasmuch as plaintiff in error became the owner of the automobile in question after the first Monday in February, to-wit, on March 21 following, that he should be excused from listing or paying any taxes on the same for the current year.

It may be observed here that the state of the law touching the question suggested by the contention just outlined is somewhat involved due to legislative changes in the statutes made from time to time previous to the year 1931. The Legislature for that year, at the instance of the Revision Committee (c. 9, Laws of Wyo. 1929; c. 73, Laws of Wyo. 1931) has made numerous alterations in an effort to harmonize our system of tax laws as regards their operative dates. What is hereinafter said, therefore, necessarily has to deal almost entirely with the statutory requirements in force prior to the year last mentioned and under which this case arose.

The decisions cited by plaintiff in error announce the rule—and this seems to be the correct one—that ordinarily property is taxable only to the person who is the owner thereof on the date to which assessments for the current year are referable. 37 Cyc. 788 and cases cited. Electrolytic Copper Company v. Rambler Consolidated Mines Cor-

poration, 34 Wyo. 304, 243 Pac. 126; Hecht v. Boughton, 2 Wyo. 385, 400. It follows from this as a necessary corollary that a tax cannot be legally charged against a former owner of the property who before that date had aliened and transferred the property to a third person. 37 Cyc. 789 and cases cited. If the former owner had previously listed it, clearly he could secure a correction of the list by merely disclosing the facts to the assessor at the proper time.

Turning to the statutes which touch the matter in hand and which were operative on March 21, 1929, the date plaintiff in error purchased the automobile in question, we find their provisions to be:

Section 2757 Wyo. Comp. St. 1920 as amended by Section 1 of Chapter 145, Laws of Wyo. 1929, following the section exempting mortgages from taxation, declares in part:

"All other property, real and personal, within this state is subject to taxation in the manner herein directed, * * * and all lands entered by pre-emption, final or commuted homestead, or as desert land, or at private or public sale, or under any act of congress, when final receipt therefor has been issued, shall be subject to taxation whether patent for the same has been issued or not, and when such final proof shall have been made before the first day of April in any year, the land so entered shall be subject to taxation for that year. It shall be the duty of the county Commissioners of each county to obtain from the officers of the United States land district in which the county may be situated, an accurate transcript and plat of all entries and sales of public land which may or should be subject to taxation. * * * On the first Monday in April of each year, they shall cause to be furnished to the county assessor of the county, a true and correct plat or plats corrected as aforesaid of all lands hereinbefore described, situate in the county."

Section 2775 Wyo. Comp. St. 1920 is one of the provisions which, in the view of counsel "might seem to fix" the date to which the assessment should relate. It enacted that "On the first Monday in April in each year, the board of

county commissioners shall furnish each assessor with suitable assessment rolls and schedules properly ruled and headed" etc. This law was amended by Section 2 of Chapter 145, supra, so as to require this to be done on the first Monday in February of each year, but as the statute did not take effect until February 25, 1929, it would appear not to have altered the course of current proceedings which took their procedure under the older law.

Section 2840 Wyo. Comp. St. 1920 provides:

"As between the grantor and grantee of any property, real, personal or mixed, where there is no express agreement in writing as to which shall pay the taxes that may be assessed thereon, if such property is conveyed on or after the first day of January, then the grantor shall pay the taxes thereon for that year."

It is suggested that this law should control the date to which assessments are referable and that circuity in collections of taxes would thereby be avoided. We are unable to see that this is so. As said concerning this statute in Carey v. Foster, 7 Wyo. 216, 51 Pac. 206, 208: "Without doubt the enactment was for the purpose of preventing misunderstandings and possible litigation between vendors and purchasers." The effect of this section, so far as who shall pay the taxes is concerned, may and often is entirely changed by agreement of the parties. Assessors are not obliged to inquire into the private contracts between individuals, but must and should be governed by the test of ownership as previously mentioned. Milligan v. Drury, 130 Mass. 428. It is not believed that this section of the statute was intended to interfere with the listing of property or its assessment for taxes.

Special provision is made for live stock in Section 2825 Wyo. Comp. St. 1920, which is required to be "listed for taxation in the county in which the same shall be located on the first Monday of February of each year. All live stock which shall be brought into this state after the first

Monday of February in any year shall be immediately list-ed for taxation in the first county which the same shall enter.''

By the terms of Section 1515 Wyo. Comp. St. 1920, the county assessor is directed to visit each person in the coun-ty and obtain from him a list of his taxable property, this work to commence on the first Monday in February of each year. This law originally provided that the county assessor should begin his task of obtaining property lists for taxa-tion on the first Monday in April of each year. The change to an earlier date was undoubtedly made in order to give him ample time to complete his work before the Board of Equalization undertook the equalization and correction of the tax roll. The performance of the assessor's work neces-sarily extends over a considerable period of time. There seems to be nothing in this statute to indicate that the date on which this work should begin should itself be the date to which all of the listings taken by the officer during the course of his work are referable. The excerpt from the opinion in the case of Martin L. Hall Company v. Common-wealth, supra, quoted above, is here pertinent.

Finally, the first clause of Section 2762 Wyo. Comp. St. 1920 provides ''All personal property shall be listed in the county where it may be on the first day of April of the then current year.'' It is said that this is a ''provision for de-termining the situs for taxation as between counties'' and consequently ''may not be regarded as controlling with respect to the date to which the listing and valuation are related.'' But the clause is general in character and ap-pears to be unqualified in its effect by anything appearing in the remainder of the section. Its language and meaning is certainly clear.

The statutes of the state being in this condition, as said by the plaintiff in error, it would appear to be a matter of deciding between several specified dates in reaching a solu-tion of the question presented. After careful survey of all these legislative directions, we are lead to the conclusion

that the unmistakable language of Section 2762 may not be disregarded and that so far as the personal property herein involved is concerned, the lawmaking body intended it should be listed and valued as of April 1 of each year to the person owning it on that date. The argument is advanced that as the assessor was obliged to commence his duties on the first Monday in February of each year in obtaining the listing of property for taxation, he could not accurately value property if the date to which the valuation was referable was a later one. But the law does not seem to require the final valuation of property to be made by the assessor and his deputies at any specified date. They are authorized to add to and deduct from valuations on schedules when they list property for taxation. Section 1515 Wyo. Comp. St. 1920. The final valuation would, of course, have to be made before the assessment roll was turned over to the county commissioners sitting as a board of equalization, which formerly was required to be done ''on or before the fourth Monday in June in each year.'' Section 1515, supra. It is certainly reasonable to think that such valuation could ordinarily be made much more accurately at the conclusion of the assessors' labors in visting the taxpayers of the several counties—a procedure, which in the larger and more populous counties of the state, it is common knowledge, usually takes several months.

It follows from what has been said that even though the dealers Sandgren and Smart listed their stock in trade on February 16, 1929, as required by Section 2773 Wyo. Comp. St. 1920 and at a time when the automobile aforesaid was held in said stock for sale, if its inclusion therein in any way affected the amount of tax due from them, they had the right to have the listing and valuation corrected inasmuch as they did not own the car on April 1 and plaintiff in error did. It was incumbent on him to list the automobile on that date for taxation. The property being omitted, the assessor was authorized to enter it upon his assessment roll. Section 2841 Wyo. Comp. St. 1920.

But it is said that, as the dealers listed their stock of merchandise as required by Section 2773, supra, and while the automobile was in their possession for sale, and thereafter paid the taxes on said stock, this would constitute double taxation if plaintiff in error should be required to pay taxes thereon. One answer to this contention has already been suggested above. Another is that it is not established by this record that the situation thus outlined would produce double taxation in the narrow or objectionable sense mentioned in the authorities. In that sense, no taxation is double unless the same property is twice subjected to the same kind of tax in the same year by authority of the same taxing power. Commonwealth v. Harrisburg Light and Power Company, 284 Pa. 175, 130 Atl. 412; 26 R. C. L. 263, § 231.

Section 2773 Wyo. Comp. St. 1920 requires the property of a merchant to ''be listed for taxation, and in estimating the value thereof, the merchant shall take the average value of such property in his possession, or control, during the year next previous to the time of listing.'' Concerning the effect of this provision of the statute, this court, in Frontier Land and Cattle Company v. Baldwin, 3 Wyo. 764, 31 Pac. 403, 406, has said:

''It is certainly just and equitable to tax the merchant on the average value of his stock for the year preceding the assessment. His stock may be larger or smaller than usual at the time of listing, owing to the fluctuations of trade, and the assessment thereof is confined to the capital employed in the business during the year, and not to the specific property on hand at the time of assessment.''

In Swift and Company v. Board of Assessors, 115 La. 325, 38 So. 1006, 1007, the court said relative to the statute under consideration in that case which defined the method of assessment of the stock in trade of mercantile firms, that it did

"not provide that the capital *eo nomine* shall be assessed, but that all the elements which enter therein shall be so valued as to represent a fair average of the capital employed. As all the elements and the capital represent the same thing, when we ascertain the fair average of the elements we also determine the fair average of the capital. The meaning of the proviso, therefore, is that the average amount of stock, money, rights, credits, etc., which may vary through the year, shall be taken as the basis of assessment."

There the business of the firm whose capital was taxed was the buying and selling of fresh meat. This meat was disposed of on arrival and on no day during the entire year did the company have on hand a stock of meat of more than $1500 in value. Its sales, however, amounted to about $20,000 per month. The assessor disregarded the cash value of the merchandise on hand as above stated and raised this value to $20,000 "on the theory that it represented the average value of the merchandise received during the previous year." Holding that this valuation was erroneous and that the judgment of the District Court reducing the valuation to $1500 was correct, the court employed the following language:

" 'Average' is obtained by calculating the mean of several amounts, numbers, or quantities. See Standard Dictionary, verbo. 'Average' is necessarily an intermediate amount, number or quantity between two extremes. If plaintiff company at no one period of time during the year had on hand more than $1,500 of merchandise, it is self-evident that a 'fair average' of its stock cannot exceed that amount.

"The assessors' contention is that the monthly receipts of merchandise during the year should be added together, and their sum total divided by 12. This method necessarily counts merchandise sold during the month as a part of the stock on hand at the end of each month, and is an assessment of the amount of purchases, rather than of stock on hand. As the money or credits received from sales are also taxable, this method would lead to double taxation, in con-

travention of the express provisions of Section 7, which declares that 'no property shall be taxed twice in the same year.' Under the assessors' rule, a merchant whose entire capital is $5,000 might be taxed on $10,000 on stock in trade, if he each month sold $5,000 of merchandise, and reinvested the proceeds in other merchandise. On the same theory a butcher or other vendor of perishable commodities, who buys and sells from day to day $100 worth of stock, might be taxed on $3,000 of capital. The circumstance that the merchant or dealer turns over his capital every six months, or every month, or every day, does not affect the question. His capital, plus profits or minus loss, remains the same; and it is this average capital, represented by merchandise, money, rights, credits, which the statute intends to reach.''

Of similar purport is Central Granaries Company v. Lancaster, 77 Neb. 319, 113 N. W. 199. Under the rule as delineated above, defining double taxation, it would seem plain that no case of that kind is presented by the record under review. The average capital of the dealers Sandgren and Smart embodied in their stock of merchandise listed does not appear. It is quite evident too, that the specific articles in the stock embracing, in this case, the automobile in question, are not taxed in the scheme provided by law for the listing of merchants' property. Hence, when the automobile was listed in plaintiff's name for taxation as a specific article, the same property was not being subjected to the same kind of tax. It can readily be seen that if the contention of plaintiff in error were adopted, then it might well be that dozens of automobiles held in stock before and sold after the dealers had given in their statements to the assessor and before the first of April, would escape taxation for that year, notwithstanding they were owned and used by individual purchasers throughout the remaining nine months.

Finally, it is insisted that the failure to give notice to plaintiff in error of the change made in the property list returned by him through the addition of the automobile to it by the assessor amounts to want of due process of law and

the tax assessed and collected is, for that reason, illegal, and Section 1527 Wyo. Comp. St. 1920 is cited.

In considering this point, it must be borne in mind that as has been demonstrated, the tax imposed in consequence of plaintiff in error's ownership of the automobile was a proper one.

In Carton v. Board of County Commissioners of Uinta County, 10 Wyo. 416, 69 Pac. 1013, 1017, a case similar to the one at bar, in that it was an action to recover taxes previously paid under protest, this court, after pointing out that if the proceeding were one to collect the taxes by sale of property or otherwise, it would be necessary to show a compliance with the terms of the statutes with reference to the assessment and levy or the proceeding would fail, then said:

"But that is not this case, and a different rule governs. The tax has been paid, and this is in the nature of an action for money had and received to recover the amount. It is an equitable action, and no recovery can be had except upon proof that the defendant has received money of the plaintiff which, in equity and good conscience, it ought not to retain. That is the basis and foundation of the action. The defendant may avail itself of any defense showing that it is legally or equitably entitled to the fund in question. Mere irregularities in the levy or assessment will not avail, and nothing short of proof that the tax was illegal and void will support a recovery. And, unless the action is brought under a statute requiring its repayment, it must also appear that the payment was made under compulsion. (Cooley on Tax. (2nd Ed.), 806, 808; Gilman v. Waterville, 59 Me. 493; Supervisors v. Manny, 56 Ill. 162; Hayford v. Belfast, 59 Me. 65; Bailey v. R. R. Co., 22 Wall. 638; Dillon Mun. Corp., Sec. 941; Wright v. City of Boston, 9 Cush. 241.)

"This being the well settled law of such cases, it is difficult to perceive how, or upon what ground, the plaintiff can recover in this action. The property, as we have found, was subject to taxation in the county, the plaintiff has paid no more than his just proportion of taxes, and the county has received no more than was its right and duty to collect. The effect of a judgment that the amount should be re-

funded would be to remit the matter to the county authorities to again collect it upon a more formal assessment, or else to enable the plaintiff to avoid the payment of taxes which he is rightfully bound to pay, by reason of the fact that the property may have passed out of the jurisdiction of the taxing officers.''

In the decision just mentioned, the personal property was confessedly not assessed in compliance with the statute. Indeed, it did not even appear on the regular tax list. The property, however, as here, was subject to taxation and no claim was made of overvaluation or excessive tax. Under these circumstances, the failure of the assessor to give notice to plaintiff in error of the addition of the omitted automobile to his schedule was not an error of such a fundamental character as to avoid the tax.

In addition, it may be observed that plaintiff in error knew that a listing of all property in the county for taxation was in progress; he knew too, that he was the owner of the automobile and that he had not listed the same; he was chargeable with knowledge of the provisions of the law relative to listing personal property on the first day of April of each year and that the law directed the Secretary of State to send daily to the assessor of the county a duplicate copy of the certificate of registration of each motor vehicle registered by residents of the county and also authorized and required the assessor to add omitted property subject to taxation when called to his notice and to submit the same to the County Board of Equalization for consideration. This being so and indulging the presumption that the officials would obey the law, it is but logical to conclude that plaintiff in error had such knowledge as would make it incumbent on him to appear before the County Board of Equalization, if he desired to question the validity of the tax. Blewett v. Richardson Independent School District, 240 S. W. 529. It does not appear from this record that he was prevented from doing so. The record does show that he made application to the Board for a refund immediately

after the payment of the tax by him and that this was refused. This court has said:

"As to what constitutes due process of law in cases of special assessments was considered by us in the case of Bass v. City of Casper, 28 Wyo. 387, 432, 205 Pac. 1008, 208 Pac. 439, and we there held that a person assessed must, ordinarily at least, at some stage of the proceedings have notice thereof and opportunity to be heard as to the validity and the amount of the tax against him. That no doubt is true also, generally, in case of assessments for general taxes. (26 R. C. L. 345; Cooley on Tax. 62, 626.) Still a somewhat more liberal construction seems to obtain in the latter class of cases. In the case of Turpin v. Lemon, 187 U. S. 51, 57, 58, 23 Sup. Ct. 20, 28, 47 L. Ed. 70, it was said:
" 'Exactly what due process of law requires in the assessment and collection of general taxes has never yet been decided by this court, although we have had frequent occasion to hold that in proceedings for the condemnation of land under the laws of eminent domain, or for the imposition of special taxes for local improvements, notice to the owner at some stage of the proceedings, as well as opportunity to defend, is essential * * * But laws for the assessment and collection of general taxes stand upon a somewhat different footing and are construed with the utmost liberality, sometimes even to the extent of holding that no notice whatever is necessary.' "

Baker v. Paxton, 29 Wyo. 500, 215 Pac. 257, 268; Hutchinson v. Board of Equalization, 66 Ia. 35, 23 N. W. 249; State ex rel. Dalton v. Baker, 170 Mo. 383, 70 S. W. 872; Anaconda Copper Mining Company v. Ravalli County, 56 Mont. 530, 186 Pac. 332.

Our conclusion upon the whole matter is that the judgment of the District Court should be affirmed.

*Affirmed.*